# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **QB GROUP, LLC.**<br>**PLAINTIFF**<br><br>V.<br><br>**TK ELEVATOR CORPORATION**<br>**DEFENDANT** | CIVIL ACTION NO.<br><br>RE: BREACH OF CONTRACT; CONTRACTUAL DAMAGES; PUNITIVE DAMAGES |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, QB Group, LLC. (hereinafter "QB GROUP"), by and through its undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, respectfully files this Complaint against Defendant, TK Elevator Corporation (hereinafter "TKE"), and states and prays as follows:

### NATURE OF THE ACTION

1. QB GROUP brings this action against TKE for breach of contract, damages, and additional relief resulting from TKE's failure to perform its contractual obligations concerning the manufacturing, delivery, and installation of elevators for a low-rise residential building known as De Diego Village (the "Project"). TKE's actions have caused significant financial losses and delays to QB GROUP, as detailed herein.

### JURISDICTION AND VENUE

2. Plaintiff QB GROUP is a limited liability company organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico.

3. Defendant TKE is a corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction under 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds the statutory threshold.

6. Venue is proper in this district, insofar as Defendant is incorporated Delaware and maintains its principal office in Atlanta, Georgia.

## PARTIES

7. Plaintiff QB GROUP is a limited liability company organized under the laws of Puerto Rico, with its principal place of business in Puerto Rico. QB GROUP's businesses consist of providing comprehensive construction services.

8. Upon information and belief, Defendant TKE is a corporation organized under the laws of Delaware, primarily engaged in manufacturing, delivering, installing, and servicing elevators, escalators, and moving walks. TKE's principal office is located at 788 Circle 75 Parkway SE, Suite 500, Atlanta, Georgia 30339, with a mailing address of P.O. Box 933977, Atlanta, Georgia 31193.

## FACTS COMMON TO ALL COUNTS

9. On April 20, 2021, QB GROUP and TKE executed a Purchase Order and entered a New Installation Proposal ("Agreement").

10. The Agreement covered the manufacturing, delivery, and installation of two "TK Elevator Evolution 100" passenger elevators ("Elevators") with an associated card reader system for the Project.

11. Under the terms of the Agreement, TKE was contractually obligated to complete the manufacturing and delivery of the Elevators by mid-2022.

12. The installation of the Elevators was scheduled to commence no later than September 2022.

13. The Agreement sets forth a total contract price of $322,777.00, with a required initial progress payment of $161,388.50.

14. This initial payment was a condition precedent to initiating manufacturing of the Elevators.

15. QB GROUP issued this initial progress payment on September 14, 2021, as per the Agreement's terms.

16. QB GROUP made this payment based on TKE's representations that the funds were necessary for procuring essential materials for the Elevators' manufacturing.

17. In further compliance with its contractual obligations, QB GROUP approved the shop drawings and the provided TKE with the maintenance agreement, duly executed by the owner of the Project on August 16, 2021.

18. Thus, QB GROUP satisfied all conditions precedent for the manufacturing of the Elevators.

19. Despite QB GROUP's full performance and multiple demands—including inquiries made by Mr. Carlos F. Archilla, Vice President of QB GROUP (hereinafter "Mr. Archilla"), on September 3, 2021, and October 5, 2021—TKE failed to commence manufacturing of the Elevators.

20. TKE also failed to or provide a definitive completion and delivery date for the Elevators.

21. TKE's failure to proceed as agreed upon constitutes a material breach of the Agreement.

22. On October 11, 2021, Mr. Jorge Amador, TKE's Sales Representative (hereinafter, Mr. Amador"), represented to QB GROUP that the Elevators had entered the production line.

23. On March 30, 2022, Mr. Amador further assured Mr. Archilla that the Elevators were under fabrication.

24. TKE's representations and/or actions were deceitful. ("Doloso" or "Dolo").

25. On December 7, 2022, Mr. Amador disclosed for the first time that critical elevator components remained unmanufactured.

26. Mr. Amador attributed this delay to purported cost increases allegedly caused by the COVID-19 pandemic; but failed to substantiate its claim with supporting documentation.

27. This disclosure directly contradicted Mr. Amador's previous representations, wherein Mr. Amador had repeatedly assured Mr. Archilla that the Elevators were under fabrication.

28. On December 8, 2022, TKE submitted a proposed change order seeking the additional amount of $103,714.70 for purported increases in labor, material, and transportation costs.

29. This change order was submitted more than 20 months after the Agreement's execution.

30. Furthermore, this change order was unsupported by any substantive documentation to justify the alleged cost escalations.

31. The additional amount requested in the change order represented a 32% increase over the original contract price.

32. TKE's failure to provide any documentation substantiating these alleged cost increases rendered the change order unsupported, without merit, and unjustifiable.

33. Despite TKE's breach, and to mitigate further delays to the Project, QB GROUP, acting in good faith, agreed to the change order based on TKE's representations that the Elevators would be manufactured, delivered, and installed by March 2023.

34. However, during a meeting held on January 26, 2023, Mr. Amador informed QB GROUP and the owner of the Project that the Elevators would not be delivered until July 2023—a full year beyond the originally agreed-upon delivery date.

35. This extended delay imposed substantial financial burdens on QB GROUP and jeopardized the Project's timely completion.

36. On January 31, 2023, QB GROUP's executive team engaged in a formal meeting with TKE to ascertain the reasons for the continued delay and to explore potential remedies to cure TKE's failure to perform its obligations under the Agreement.

37. During this meeting, Mr. Amador disclosed that it had not yet commenced manufacturing of the Elevators.

38. Mr. Amador further disclosed that it was unable to provide a definitive timeline for manufacture or delivery, proposing September 2023 as the earliest possible delivery date.

39. Thus, TKE proposed delivering the Elevators 2 months after the Project's final completion date.

40. Despite multiple demands for a recovery plan, TKE failed to provide any actionable or credible recovery plan.

41. As a final recourse, QB GROUP provided TKE with an opportunity to submit a recovery plan by February 7, 2023, outlining specific dates for the completion, delivery, and installation of the Elevators.

42. TKE failed to comply.

43. Due to TKE's continued non-performance, on February 8, 2023, QB GROUP was compelled to issue a formal notice of termination of the Agreement for cause.

44. In QB GROUP'S termination letter, QB GROUP demanded the immediate reimbursement of the initial progress payment of $161,388.50 and reserved the right to pursue all legal remedies available for damages sustained because of TKE's material breach of the Agreement.

45. TKE's failure to fulfill its obligations caused QB GROUP substantial and ongoing damages, which became fully quantifiable only upon the completion of the Project.

46. To mitigate delays caused by TKE's breach, QB GROUP was forced to retain the services of Deyá Elevator Service Inc. ("Deyá").

47. The total cost for Deyá's services amounted to $586,792.00, nearly double the original contract price.

48. In addition, QB GROUP incurred $45,689.62 in freight charges related to the shipment of necessary components for the Elevators.

49. QB GROUP further incurred $18,305.86 for change orders required to accommodate Deyá's work.

50. These direct costs, stemming from TKE's negligence and failure to fulfill its obligations amount to $651,287.48.

51. Beyond direct costs, TKE's breach caused significant indirect expenses for QB GROUP.

52. QB GROUP's senior executives were required to allocate substantial time and resources to manage the fallout from TKE's non-performance, resulting in extended overhead expenses of $10,000.00.

53. The delays caused by TKE materially disrupted the completion of the Project's elevator lobbies and corridors, resulting in additional costs of $25,000.00 for CMU walls, plaster, paint, and devices.

54. QB GROUP also incurred an additional $5,000.00 in floor tile installation costs.

55. Further, QB GROUP incurred $15,000.00 in additional costs for gypsum board ceilings.

56. The total indirect costs attributable to TKE's breach of the Agreement amount to $70,000.00.

57. TKE's actions and omissions constitute a material breach of contract, entitling QB GROUP to recover all damages arising from this breach, including but not limited to direct and indirect costs, consequential damages, and legal fees incurred in the enforcement of QB GROUP's rights under the Agreement.

58. The cumulative damages resulting from TKE's breach of contract amount to $398,510.48

## FIRST COUNT
## (BREACH OF CONTRACT AND COLLECTION OF MONEY)

59. QB GROUP hereby incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

60. TKE has materially breached the terms of the Agreement by failing to timely manufacture, deliver, and install the Elevators, thereby obstructing QB GROUP's ability to complete the Project within the agreed-upon timelines.

61. Despite repeated demands by QB GROUP, TKE has refused to compensate QB GROUP for the damage resulting from its failure to fulfill its contractual obligations, thereby causing QB GROUP substantial and ongoing financial harm.

62. As a result of TKE's breach, TKE is indebted to QB GROUP for the principal sum of $398,510.48, in addition to all contractual and legal interest accruing from the date of breach until the balance is paid in full.

## SECOND COUNT
## (PUNITIVE DAMAGES)

63. QB GROUP hereby incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

64. The actions and false representations were willfully and deceitfully ("dolo") executed by TKE, demonstrating a complete and reckless disregard of QB GROUP's rights.

65. Due to the willful and deceitful actions and false representations committed with gross disregard for QB GROUP's rights, TKE is obligated to provide additional compensation, equivalent to an amount equal to those imposed under the applicable causes of action, which are estimated at no less than $398,510.48.

66. Considering the foregoing, QB GROUP requests that this Honorable Court determine that the actions and representations made by TKE were carried out willfully, deceitfully and with complete disregard of QB GROUP'S rights and order TKE to pay the amount of no less than $398,510.48.

## **THIRD COUNT**
## **(ATTORNEY's FEES AND PREJUDGMENT INTERESTS)**

67. QB GROUP hereby incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

68. TKE has acted in a vexatious and unreasonable matter, repeatedly ignoring multiple good faith extrajudicial demands and efforts offered by QB GROUP, with the obvious purpose of delaying payment of the amounts lawfully owed.

69. TKE's unreasonable obstinance and failure to negotiate or resolve this matter in good faith has forced QB GROUP to incur unnecessary legal expenses and has unjustifiably burdened the judicial system.

70. Considering TKE's obstinate, unreasonable, and frivolous conduct, the Court should make a finding of obstinacy against TKE and award QB GROUP all attorney's fees incurred in connection with this litigation, as well as prejudgment interest calculated from the date QB GROUP's cause of action for collection of monies arose.

**WHEREFORE**, Plaintiff, QB GROUP, respectfully prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, TKE, ordering Defendant to pay the principal sum of **$398,510.48**, representing damages resulting from Defendant's breach of contract, plus contractual interest accrued until full payment is made; an additional sum of **$398,510.48** as punitive damages for TKE's willful and deceitful conduct; and all costs, expenses, legal interest, and attorney's fees, along with any further relief that this Honorable Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 23rd day of December 2024.

**NEVARES, SÁNCHEZ-ÁLVAREZ & CANCEL PSC**
URB. ALTAMESA
1307 SAN ALFONSO AVE.
SAN JUAN, PR 00921
TELEPHONE (787) 723-9774
E-MAIL: lcancel@nsalaw.com
EMAIL: dmelendez@nsaclaw.com

*s/LEMUEL CANCEL-MÉNDEZ*
**LEMUEL CANCEL-MÉNDEZ**
USDC-PR No. 217605

*s/DANIEL MELÉNDEZ BARREIRO*
**DANIEL MELÉNDEZ-BARREIRO**
USDCPR-308814